IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RICKY LEWIS WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 319-023 |
| | ) | |
| JILL CRAVY, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate incarcerated at Smith State Prison in Glennville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983, regarding events allegedly occurring at Telfair State Prison in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Before the Court is Nurse Cravy's pre-answer motion to dismiss, (doc. no. 26), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

I.  **BACKGROUND**

   A.  **Procedural History**

Plaintiff initially named eight Defendants in his complaint, and because he is proceeding IFP, the Court screened the complaint, directed service of process on Nurse Cravy, and dismissed seven Defendants. (See doc. nos. 1, 17, 19, 24.) The Court allowed Plaintiff to proceed on his Eighth Amendment deliberate indifference claim against Nurse

Cravy based on allegations of improper medical treatment. (Doc. no. 19.) On January 13, 2020, Nurse Cravy filed a motion to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 26.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

**B.     Complaint Allegations**

With respect to Nurse Cravy, Plaintiff alleges the following facts in his complaint signed on March 3, 2019. On May 10, 2017, a riot occurred in B-2 dorm between Blood gang members, Crip gang members, and MS-13 Mexican gang members which resulted in Plaintiff being struck in the head with a lock. (Doc. no. 1, pp. 4-5.) After being struck with the lock, Plaintiff retreated to his cell and attempted to stop the bleeding but was unsuccessful. (Id. at 14.) Plaintiff requested medical assistance by calling out to officers, but no one responded. (Id.) The next day Plaintiff placed a medical request inside the door of his cell for an officer to pick up. (Id.) The medical request was removed from the door, but Plaintiff received no medical attention. (Id.) Seven days later, Plaintiff placed another medical request inside the door of his cell, but again received no medical attention. (Id.)

On May 21, 2017, Plaintiff received a callout for his injuries, but no officer or staff member escorted him to medical. (Id.) On May 24, 2017, Plaintiff filed a grievance listing his injuries and the gang members who caused those injuries during the May 10th riot. (Id.) Counselor Fruitrail read the grievance and gave Plaintiff a receipt. (Id.) Around May 31, 2017, Plaintiff went to medical and saw Nurse Cravy. (Id.) Plaintiff showed Nurse Cravy his injuries and explained he was still experiencing head pains and blurry eyesight. (Id.) Nurse Cravy stated, "I don't want anything to do with that" and "I don't want to investigate it." (Id.) She then

2

gave Plaintiff Motrin pills to treat his head injury. (Id.) Plaintiff suffered an open head wound and a concussion as a result of being struck in the head with a lock during the riot. (Id. at 5.) The spot where Plaintiff was hit is still visible and he continues to seek constant medical treatment. (Id.) For relief, Plaintiff requests $500,000 in compensatory damages, $500,000 in punitive damages, and injunctive relief. (Id.) As to the issue of exhaustion of administrative remedies, Plaintiff states he requested to appeal his denied grievance twice, and once he appealed, he never received a response. (Id. at 7.)

In her motion to dismiss, Nurse Cravy produced the declaration of Cynthia Stewart, the Chief Counselor at TSP. (See Stewart Decl., doc. no. 26-2.) The Chief Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 4.) The Chief Counselor identified one grievance Plaintiff filed at TSP in 2017. (Id. ¶ 13.) Specifically, on May 24, 2017, Plaintiff filed grievance 244818, stating on May 10, 2017 a riot occurred in B-2 dorm which resulted in Plaintiff being struck in the head with a lock and he was never seen by medical personnel despite his resulting injury. (Doc. no. 26-3, pp. 4-5.) On June 21, 2017, Warden Hall rejected Plaintiff's grievance as untimely. (Id. at 2.) There is no record of an appeal.

## II. DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility

4

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement,

5

administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

According to the Chief Counselor, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP IIB05-0001, which became effective on July 20, 2015. (Doc. no. 26-4.) The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(4). "The complaint on the Grievance Form must be a single issue/incident." Id. § VI(D)(2). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(3), (5)(a). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

Grievances involving sexual assault or physical force involving non-compliance with policies are automatically forwarded to Internal Investigations Unit and/or the PREA Coordinator. Id. § VI(D)(8)(a). Once referred, the grievance process terminates, and the inmate will receive notice and must sign a copy of said notice to be filed with the prison's local files. Id. § VI(D)(8)(b-d). Internal Investigations has ninety days from the date of the original grievance to issue a decision. Id. § VI(D)(8)(e). An extension of up to seventy days may be granted. Id. § VI(D)(8)(f). An inmate may not appeal the Warden's decision to refer the grievance to the Internal Investigations. Id. § VI(D)(8)(h).

The inmate then has seven calendar days from the date they receive the response from the Warden or Internal Investigations to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-

(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § VI(E)(7).

### C. Plaintiff's Failure to Exhaust

Plaintiff failed to exhaust administrative remedies as to his deliberate indifference claim against Nurse Cravy because Plaintiff filed grievance 244818 one week before he saw her. (Doc. no. 26-3, p. 5.) Thus, there is no way Plaintiff could have grieved the events detailed in his complaint through grievance 244818. Notably, grievance 244818 does not mention or complain of Nurse Cravy's alleged inadequate medical treatment of Plaintiff's injury because Plaintiff complains of receiving no medical treatment at all. (Id.) There were no other grievances filed by Plaintiff after treatment by Nurse Cravy. Additionally, there is no indication the grievance process at TSP was unavailable to Plaintiff. Therefore, Plaintiff failed to exhaust his claims regarding Nurse Cravy. Because Plaintiff did not exhaust his administrative remedies with respect to his claim against Nurse Cravy prior to initiating this lawsuit, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 26), and this case **DISMISSED** and

**CLOSED**.

SO REPORTED and RECOMMENDED this 20th day of February, 2020, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA